Gillespie *v.* Durand.

---

ALEXANDER GILLESPIE and another *v.* CALVIN DURAND.

A party who purchases goods arriving in bond, is not liable for demurrage of the vessel wherein they were transported to this port, for detention occurring before the vendor obtains from the custom house a permit for the delivery.

The purchaser may refuse to receive the goods until the proper papers are obtained from the custom house, without incurring any liability for demurrage, although the removal of the goods might have been sooner effected by the illegal consent of a subordinate government officer.

Whether the amount recovered by the owners of the vessel, against the consignees of the goods, in an action for demurrage, forms a rule of damage in an action by the latter against a purchaser charged with delay in unlading? *Quere.*

MESSRS. Goodenham and Wearts, at Toronto, Canada West, consigned upwards of fifty-five hundred bushels of wheat, through Fitzhugh and Littlejohn, of Oswego, to Gillespie,

Dean and Co., the plaintiffs in this suit, at New York, for sale on commission. The wheat having been imported into the district of Oswego, was entered in bond, at the custom house in that port, for transportation to New York, where it arrived on Friday, May 20, in a barge owned by Fitzhugh and Littlejohn. On the day preceding, the consignees had sold it to Durand, the defendant, to whom they gave notice of its arrival, and the defendant, in writing, requested them to have the barge laid alongside of a brig, in order, as he stated, that the wheat might be transhipped by his men for exportation to Kingston, Jamaica. By the terms of the sale, the wheat was to be taken by the defendant from the vessel.

The barge having been delayed for eight days, the owners thereof obtained and collected a judgment against these plaintiffs for six days' demurrage, and the latter thereupon instituted the present action against the defendant for the recovery of the amount of such judgment.

The defendant set up several defences and raised numerous questions, both of fact and of law. Of these it is only necessary to mention one, upon which the case was determined in this court. The plaintiffs having given evidence of a usage, and having insisted that the defendant was bound thereby to unlade the barge within two days after her arrival, the defendant claimed, among other things, that the plaintiffs were bound to make the warehouse reëntry at New York, and to indorse thereon formal authority to the defendant to receive the goods, and that having omitted to make the entry until May 25, and to give the formal authority until May 30, the defendant, who completed the unlading on the 27th, was under no liability to them.

The deputy collector of this port testified, that in such cases the goods are shipped from Canada to Oswego, where they are placed in bond by the importer. That the bond is given in lieu of paying the duty, and provides that the goods shall be placed in the custody of the collector at New York, to which place they are transported. That the entry at Oswego states that the goods are intended to be withdrawn from warehouse

Gillespie *v.* Durand.

for transportation to New York. That the re-warehouse entry at New York places the goods in the custody of the collector here—is a record that they have arrived—and is a copy of the entry transmitted from Oswego. That the importer, or person acting for him, by a formal writing on the re-warehouse entry, authorizes the exporter to receive the goods, until which authorization the title thereto continues in the consignee. That after such re-warehouse entry is made and authority given, it is the exporter's duty to make a re-warehouse export entry, although it is frequently a matter of arrangement for the importer to do so; but that such export entry cannot be made before the re-warehouse entry and authorization above mentioned are completed. That by consent of subordinate officers of the customs, a transhipment is sometimes allowed before either the import or the export entries or papers are complete, officers retaining custody and the export vessel being temporarily constituted a warehouse. It appeared from some of the testimony, however, that such consent could be legally given only by the collector or deputy collector.

The barge was laid alongside the brig on Saturday, the 21st. On Monday the transhipment, under the permission of a district officer in charge of the barge, commenced. On Wednesday, the 25th, the re-warehouse entry was made. On Friday, the 27th, the transhipment was completed, after interruptions from rains—forming, as was claimed, an exemption from the alleged obligation to unlade within two days—and after delays occasioned also, as the defendant insisted, by acts of the bargemen. These excuses were held by the plaintiff either unfounded in fact or insufficient in law.

The former authorization to receive the goods was not indorsed upon the re-warehouse entry until May 30, when the export entry was also made.

The Marine Court gave judgment for the plaintiffs for a sum equal to the six days' demurrage recovered against them by Fitzhugh and Littlejohn. The defendant appealed.

*William A. Hardenbrook*, for the defendant. The following

is an abstract of so much of his argument as relates to the points upon which the case was decided in this court.

It is to be remembered that this was Canada wheat, and was bonded at Oswego, so that when it arrived here it was still in the custody of the collector of Oswego. It became then the duty of the plaintiffs, Gillespie, Dean and Co., the consignees, to make the warehouse import entry at the custom house, in order to transfer the wheat to the custody of the collector of the port of New York. Their next step would be to sign the authority for Mr. Durand to export, and until they did this they could not lawfully call on him to take any step in respect of the wheat. In doing these things the witness must have acted, as he swears he really did, as the agent for the plaintiffs. He did not and could not begin to act for Mr. Durand till after that time.

The wheat arrived at New York, May 20, afternoon. May 21, Saturday, in the morning, the boat was hauled alongside Mr. Durand's brig, the "Azalia;" yet the plaintiffs neglect to make their re-warehouse import entry till Wednesday, May 25.

The authority to Mr. Durand to export could not, in *naturâ rerum*, have been given before that day, and does not appear from the evidence to have been given till the 30th or 31st, some days following. Hence the plaintiffs could not call on the defendant to take any step in respect of the wheat till after the 25th, certainly; and we claim till after the 30th. This view of the case certainly exonerates Mr. Durand, as Wednesday, 25th, and Thursday, 26th, were both rainy, and he had the cargo all out by noon of Friday, 27th.

Although the chief difficulty was the rains, this delay in passing the custom house papers was one actual cause of delay, notwithstanding that the wheat was finally shipped before they were completed.

It would be also essential that after the plaintiffs had taken these steps they should give Mr. Durand notice of the same, which is not proved, and appears not to have been done.

We insist, on behalf of the defendant, that as matter of law the connivance and consent of the custom house officer to the

removal of the wheat before the passing of the papers cannot be pleaded or offered in evidence. It is an illegal act, and if shown would not raise any conclusions favorable to the plaintiff. (See warehousing act, laws of U. S., August 6, 1846, and circular, No. 34, instructions to collectors and other officers, made law by that act.)

To hold otherwise would be to compel the defendant to take the wheat out of the custody of the collector without either paying the duty on it or redeeming his custom house bond.

It appears by the testimony of Mr. Odell and Mr. McLean that the collector or his deputy is the only proper person to give the permit, not the district officer. In this case none was obtained, nor even asked for.

The judgment against the plaintiffs is no evidence against Mr. Durand. (*Bank of Oswego* v. *Babcock*, 5 Hill, 152.)

He was no party to the suit and could not be heard. If liable at all, it must be to the extent of his own negligence, and no more. He could not be liable to repay the costs and expenses of that action, for there is nothing on which to found a contract of indemnity, like the cases of principal and surety, or agency, or where one is bound for another's debt, which indeed seem to be the only cases in which this kind of action can be maintained at all.

*Henry Whittaker*, for the plaintiff. The following is abstracted from the portions of his argument which relate to the questions determined in the opinion of this court.

The import entry was a mere form, and the appellant assumed the duty of making all formal entries. He never made any objection or requisition to the respondents. He prescribed the mode of delivery, and accepts the delivery so made. The title to the wheat was his from the 20th; the possession was his—he assumed it—and it is idle to say that he could not be called upon to take steps which he assumed to take and actually took without question or objection.

It is equally idle to say that a thing could not be done in *naturâ rerum*, before the 30th of May, which was actually

commenced on the 20th, and completed on the 27th. The delay in passing the custom house papers was the act of the appellant's own agent, and in no wise the act of the respondents, and did not delay the transhipment even for one hour.

The permission to tranship was not an illegal act. It was given by the proper party. The act of the United States, cited by the defendant, does not make it illegal. All the forms prescribed by that act were complied with. The instructions the appellant refers to are not in evidence; they are not public documents; they are mere internal regulations "to secure a just accountability as officers," and are not binding on the public. The public are not bound to know their contents. They cannot, *per se*, create an illegality, and, even if they could, that illegality exists only as between the officers and the government, and not as regards third parties. The regulations and the act are directory, not obligatory, in this respect. They give a discretion to the officers, and that discretion was here exercised and properly exercised.

The appellant cannot create an illegality by implication. The delivery to him was complete when the canal barge was at his express request laid alongside the brig, in order that his men might tranship the wheat, which they immediately commenced to do. Even if the acts in the present case were illegal, they were his own acts, and he cannot take advantage of that illegality to fix the damages arising from them on the respondents, who had nothing to do with them. The point is eminently technical and contrary to justice. (Code, § 366.) That the appellant was not bound to work in rainy weather is a pure assumption, and contrary to evidence. He had two fair days, Saturday and Monday, during which the wheat was in his power, and, but for his neglect, the transhipment would have been complete before the rain came.

The appellant assumed and completed the duty of transhipping the wheat before the custom house papers were complete.

Negligence is proved against the appellant and against him alone. The negligence here charged is proved by external evidence, and not by the judgment itself. It was made a ques-

Gillespie *v.* Durand.

tion of fact, and decided by the court as such without reference
to the judgment. The appellant is liable to indemnify the
respondents in full. The case cited by the appellant is an
actual authority in favor of that view. The delay was one that
could have been avoided and was occasioned by his own acts.

By the Court. Ingraham, First J.—Without examining
the various questions relative to the admission of evidence, I
think the judgment must be reversed upon the merits.

The action was to recover from the defendant moneys paid
by the plaintiffs to the owners of boats containing wheat con-
signed to them, for demurrage of the boats while delayed in
discharging their cargoes here. The wheat was from Canada,
in bond, consigned to the plaintiffs; and, before arrival here, it
was sold to the defendant, who was to receive it from the
boats.

The sale was on the 19th of May. The boat arrived on the
20th of May, and notice was given to the defendant on that
day as appears from his letter of the same date.

On the 23d of May the defendant's workmen commenced
removing the wheat.

The warehouse reëntry was not made in New York until
May 25th, nor completed until May 30th, when Dean, one of
the plaintiffs, made the necessary affidavit thereto, and the
authority was signed by the plaintiffs to the defendant to with-
draw the wheat from the warehouse.

It does not appear distinctly when the wheat was entirely
discharged, but I conclude from the last claim of demurrage
being for that day, that the discharging was completed on the
27th of May.

The testimony of the deputy collector shows that, until the
importer makes the warehouse entry and authorizes the ex-
porter to receive the wheat, the title is in the consignee; and,
after that, the exporter's duty is to complete the papers. This
can only be shown by the written documents. Verbal per-
mission from an under officer or clerk, before the entries are
made, cannot satisfy the law.

But even conceding that such verbal permission of a clerk might suffice to allow a transhipment into the export vessel, after the import entry is made of the goods in New York to be warehoused, that act was not done until the 25th of May, and within two days thereafter the wheat was discharged. The plaintiffs have recovered for six days demurrage, and as the greater part of this time was prior to such entry, the judgment for the amount awarded cannot be sustained.

It may be that, for the dispatch of business, parties will venture, in violation of the law, to deliver and receive goods under bond, before permission is regularly obtained from the proper officer, but I can see no propriety in holding as a legal proposition, that parties are bound to act on such a consent or permission from a mere clerk in the employ of the government. It was the duty of the plaintiffs to make the warehouse reëntry. If he intended to hold the defendant responsible for the delay, he should have made it at once; and, having neglected to do so, he cannot hold the defendant responsible for a failure to perform what would have been an illegal act, although connived at or sanctioned by a clerk in the public employ.

It is not necessary to express any opinion upon the other questions in this case.

Whether or not the defendant is liable for demurrage at all, and how far the judgment against the plaintiffs can form a rule of damages against the defendant, are questions not free from difficulty.

The judgment must be reversed.

Judgment reversed.